**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Corporate Commission of the Mille
Lacs Band of Ojibwe Indians,

                      Plaintiff,        Civ. No. 12-1015 (RHK/LIB)
                                             **MEMORANDUM OPINION
                                             AND ORDER**

v.

Money Centers of America, Inc. and MCA
of Wisconsin, Inc.,

                      Defendants.

Jane E. Maschka, Michael M. Krauss, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for Plaintiff.

Luke P. McLoughlin, James L. Beausoleil, Jr., Duane Morris LLP, Philadelphia, Pennsylvania, Robert B. Patterson, Jr., Patterson Law Office, PA, Minnetonka, Minnesota, for Defendants.

**INTRODUCTION**

      Plaintiff Corporate Commission of the Mille Lacs Band of Ojibwe Indians ("the Commission") retained Defendants Money Centers of America, Inc. and MCA of Wisconsin, Inc. (collectively "MCA") to provide cash-access services at the Commission's casinos. When the Commission terminated their agreement in April 2012, MCA owed it approximately $5.6 million, which MCA has yet to pay. The Commission now seeks to secure its potential judgment against MCA by moving the Court to attach MCA's assets or, alternatively, to enjoin MCA from dissipating assets allegedly

belonging to the Commission. For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

On April 17, 2009, the Commission and MCA entered into a three-year contract ("the Agreement") for MCA to provide cash-access services at the Commission's casinos, Grand Casino Mille Lacs and Grand Casino Hinckley. The Agreement provided that the Commission would advance MCA cash from its on-site vaults and MCA would provide that cash to casino customers in exchange for payment by check or credit/debit card. Then, MCA would deduct its fees from the amount advanced and "electronically transfer funds to the CORPORATE COMMISSION's designate[d] gambling facility in settlement of each vault cash advance in accordance with the Vault Cash Settlement Schedule to be provided by MCA to CORPORATE COMMISSION prior to the first advance." The Agreement did not restrict which funds MCA could use to settle the cash advances; it did not provide for escrow accounts or any other method for earmarking funds. It only required MCA to return the amount of the Commission's advances, minus MCA's fees, according to the parties' agreed schedule. In addition, the Agreement required MCA to repay the full amount advanced (minus fees) regardless of the amount of funds it received from casino customers in exchange for the cash; so MCA assumed the risk of customers' checks bouncing, for example. The Commission alleges that these settlement payments were due within four to six days of each cash advance.

During the course of their relationship, the Commission advanced MCA vault cash nearly every day, and MCA used that cash to provide services in the Commission's

casinos as agreed.  MCA deposited the customers' funds into bank accounts it had dedicated to each casino (referred to as the "Hinckley Account" and the "Mille Lacs Account"); both accounts were with Bay Bank in Wisconsin.  MCA used these accounts to repay the Commission, as well as "to fund . . . working capital."  Over time, MCA took longer and longer to repay the Commission's advances and, as a result, the amount of money it owed the Commission steadily increased.  The Commission sent notice to MCA in October 2011 that it was in breach of the Agreement for failing to settle the advances according to the parties' agreed schedule of four to six days.  MCA continued to delay repayment, however, and in April 2012, the Commission terminated the Agreement.  At that time, MCA owed the Commission $5,623,687.83, which remains unpaid.

The Commission brought this action against MCA to recover the $5.6 million and other damages, asserting claims for breach of contract, unjust enrichment, conversion, replevin, constructive trust, and fraud.  MCA countered with claims for breach of contract, unjust enrichment, promissory estoppel, and tortious interference with contractual relations.  In July 2012, the Commission moved for prejudgment attachment or replevin.  However, that motion was stayed while the Commission amended its Complaint and sought expedited discovery.  During discovery, MCA represented that money from the Commission's casinos was "not located in any location from which MCA has the power to retrieve it."  The Commission discovered through third-party subpoenas, however, that MCA had closed its Hinckley and Mille Lacs Accounts in June 2012 and deposited their collective balance of $714,875 into a new account (the "3900 Account"), which held a balance of $43,815 on October 31, 2012.

Concerned about MCA's insolvency and quickly dissipating assets, the Commission filed this Renewed Motion for Preliminary Attachment and Motion for Temporary Restraining Order[1] in December 2012. It seeks to secure its potential judgment against MCA by attaching MCA's assets or, alternatively, by enjoining MCA from further disposing of any assets traceable to the Hinckley, Mille Lacs, or 3900 Accounts and from making payments to or on behalf of its executives. The Motion has been fully briefed, the Court heard oral argument on December 19, 2012, and the matter is ripe for disposition.

## ANALYSIS

**I.   Attachment**

The Commission moves to attach MCA's "bank accounts, company cars, and assets" pending resolution of its claims. MCA responds that the Court cannot attach MCA's assets because they are located outside of Minnesota, and therefore outside the Court's reach. The Court agrees that it cannot grant the relief requested, regardless of whether the Commission would otherwise be entitled to prejudgment attachment.

Federal Rule of Civil Procedure 64 grants federal courts the power to seize persons or property to secure satisfaction of a judgment *if* such a remedy is available under the forum state's law. Thus, this Court may apply a remedy such as prejudgment attachment to the extent that Minnesota law allows. Although Minnesota law permits

---

[1] Although captioned as a Motion for Preliminary Attachment and Request for Temporary Restraining Order, it is clear from the Commission's memoranda that it is requesting prejudgment attachment or a *preliminary injunction*, not a temporary restraining order, and the Court addresses it accordingly.

prejudgment attachment under certain circumstances, see Minn. Stat. § 570.02, a Minnesota court cannot attach out-of-state property, Allstate Sales & Leasing Co. v. Geis, 412 N.W.2d 30, 32-33 (Minn. Ct. App. 1987) ("A state court cannot attach assets located outside the state."), and as a result, neither can this Court.  Because MCA's property is not located within Minnesota, the Court cannot reach it.  See also 6 Am. Jur. 2d Attachment & Garnishment § 23 ("It is a fundamental rule that in attachment or garnishment proceedings the res must be within the jurisdiction of the court issuing the process."); GM Gold Diamonds, LP v. Fabrege Co, Inc., 489 F. Supp. 2d 725, 727–29 & n.1 (S.D. Tex. 2007) ("[I]t should not be surprising that each court which has decided the extraterritoriality issue has refused to give effect to attachment writs aimed at a res outside the territorial boundaries of the forum state.").

The Commission cites no case in which a Minnesota court has departed from this rule and attached out-of-state property.  Instead, it argues that the Court can attach MCA's property by ordering MCA to deliver it into Minnesota.  In support, it cites a provision in the attachment statutes which states, "An order for attachment may: . . . require the respondent, the respondent's agents or employees, or any other person having possession of the property subject to the order to deliver the property to the sheriff." Minn. Stat. § 570.051, subd. 2.  However, the Court does not read this language as bestowing extraterritorial application.  The language the Commission cites is only part of a longer subsection that is aimed at facilitating the seizure of property that is difficult for the sheriff to obtain or locate or that a respondent may seek to "remove[] from the state with intent to delay or hinder the respondent's creditors."  Id.  This language affirms,

rather than undermines, the Court's conclusion that Minnesota's attachment statutes do not apply to property located outside of the state.

Because the Commission seeks to attach out-of-state property, the Court is powerless to grant the requested relief and need not address the merits of the Commission's Motion for prejudgment attachment.

## II.     Preliminary Injunction

Alternatively, the Commission seeks to secure its potential judgment through a preliminary injunction under Federal Rule of Civil Procedure 65 and the Court's general equitable power.  It asks the Court to enjoin MCA from disposing of assets traceable to the Mille Lacs, Hinckley, or 3900 Accounts and from making payments to or on behalf of its executives, pending resolution of the Commission's claims.  In response, MCA argues that such an injunction is barred by the Supreme Court's decision in Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999), and the Court agrees.

In Grupo Mexicano, the Supreme Court held that "the District Court had no authority to issue a preliminary injunction preventing petitioner from disposing of their assets pending adjudication of respondents' contract claim for money damages." Id. at 333.  The Court reasoned that, because such relief was traditionally unavailable in courts of equity, it remains unavailable—and, consequently, beyond the Court's power—today.  The Court was careful to note, however, that the plaintiff in Grupo Mexicano was seeking *only* money damages and asserted no "equitable interest or lien" in the defendant's property.

This caveat distinguishes Grupo Mexicano from Deckert v. Independent Shares Corp., 311 U.S. 282 (1940), in which the "principal objects" of the suit were rescission of the contract and restitution for the consideration paid (both equitable remedies), and the Court granted a preliminary injunction freezing the defendant's assets. Id. at 289.  The Court stated in Deckert, "That a suit to rescind a contract induced by fraud and to recover the consideration paid may be maintained in equity, at least where there are circumstances making the legal remedy inadequate, is well established." Id.

The instant case is neither purely legal nor purely equitable—the Commission requests damages, constructive trust, and replevin in its Amended Complaint.  Therefore, this case falls somewhere in the gray area that lies between Grupo Mexicano and Deckert, which the Eighth Circuit has yet to address.  Other courts that have addressed actions presenting both legal and equitable claims have reached varying results.  Some narrowly construe Grupo Mexicano and seem to conclude that *any* cognizable claim to equitable relief may be sufficient to bestow a court with the power to order a preliminary injunction freezing assets.  See e.g. Rahman v. Oncology Assocs., 198 F.3d 489, 497 (4th Cir. 1999) (setting forth a two-step analysis: "[W]e must begin with an analysis of the claims in suit to determine whether they seek cognizable relief in equity involving assets of the defendant.  We then proceed to determine whether the interim relief sought . . . is a reasonable measure to preserve the *status quo* in aid of the ultimate equitable relief."). But under such a rule, "any artful pleader could circumvent Grupo Mexicano merely by 'sprinkling' a bit of equity on a suit at law for money damages." Id. at 495 (internal quotation omitted).  Furthermore, the decision in Rahman was based, in part, on the

strong public interest involved and the allegation that the assets the government sought to freeze had been obtained by the defendants through fraud. Neither of these factors is present in the instant case.[2] Other cases the Commission cites in support of its request for an injunction are also materially distinguishable. See Huntington Nat'l Bank v. Guishard, Wilburn & Shorts, LLC, No. 2:12-cv-1035, 2012 WL 5902916, at *6 (S.D. Ohio Nov. 26, 2012) (freezing assets allegedly obtained through fraud, where parties did not have contract, and plaintiff sought permanent injunctive relief); Concheck v. Barcroft, No. 2:10-cv-656, 2010 WL 4117480, at *2 (S.D. Ohio Oct. 18, 2010) (freezing assets allegedly obtained through a fraudulently induced investment); Slidell, Inc. v. Millenium Inorganic Chems., Inc., No. Civ. A. 02-213, 2001 WL 649086, at *3 (D. Minn. Apr. 17, 2002) (enjoining defendant from disassembling or disposing of partially-constructed packaging equipment that was subject of contract dispute); CSC Holdings, Inc. v. Greenleaf Elecs., Inc., No. 99-C-7249, 2000 U.S. Dist. LEXIS 7675, at *29 (N.D. Ill. June 1, 2000) (freezing proceeds from sale of illegal goods where plaintiff sought permanent injunctive relief).

In the Court's view, the better reading of Grupo Mexicano and Deckert focuses on the essence of the action and the strength of the alleged equitable interest. See e.g., Oak Leaf Outdoors , Inc. v. Double Dragon Int'l, Inc., 812 F. Supp. 2d 944, 947–48 (C.D. Ill. 2011) (injunction denied because movant's "'equitable claims' of promissory estoppel, unjust enrichment, and claim for injunctive relief all derive from the same occurrence,

---

[2] Although the Commission has pleaded a fraud claim based on representations MCA made in a vendor-license application in January 2012, that claim is not relevant to the instant Motion.

namely, a breach of contract"); id. at 948 ("Assume one party properly delivers the bicycle, but the other only makes partial payment. Would this scenario also support claims of any unjust enrichment? No. That is a straightforward breach of contract situation in which the available remedy is money damages."); JSC Foreign Econ. Ass'n. Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 295 F. Supp. 2d 366, 389 (S.D.N.Y. 2003) ("[T]he equitable relief the plaintiff seeks is designed to effectuate the collection of money in satisfaction of alleged legal liability. A preliminary injunction in this case would be issued in aid of the collection of a money judgment, not final equitable relief, an outcome barred by Grupo Mexicano.").

The Court concludes that the instant action is fundamentally a contract dispute for money damages. Both parties acknowledge that the Agreement governs their relationship and that the Agreement sets forth MCA's promise to repay the Commission and the terms of that promise. The gravamen of the Commission's Amended Complaint is that MCA breached that promise. The Commission's unjust-enrichment claim is merely a breach-of-contract claim clothed in equitable garb. It does not allege that the vault cash was fraudulently obtained or that MCA disposed of it in a fraudulent or illegal manner. The parties agree that the Commission willingly and knowingly advanced MCA the cash and that MCA used it to provide cash-access services as directed by the Agreement. The parties' disagreement relates only to MCA's failure to repay the Commission's advances on time (or at all).

Although the Commission seeks to imbue this contract dispute with fraudulent overtones by implying that the funds MCA received from casino customers "belonged to

the Commission" and MCA "stole" them, this contention is not supported by the Agreement. The Commission's attempt to characterize its claim as equitable by requesting the "return of its own money" and "not damages" fails for two reasons. First, the money it seeks is not "its own" because the Commission's vault cash was distributed to casino customers, not retained by MCA. The money from the Hinckley, Mille Lacs, and 3900 Accounts that the Commission claims "belongs" to it is money that customers paid to MCA. Second, the Commission's Amended Complaint includes an unambiguous prayer for relief in the form of money damages. See U.S. Bank Nat'l Ass'n. v. Angeion Corp., 615 N.W.2d 425, 434–35 (Minn. Ct. App. 2000) ("We disagree with U.S. Bank's argument that its claims o[f] constructive trust, specific performance and declaratory judgment create a distinction that makes the Grupo Mexicano analysis inapposite . . . . U.S. Bank's constructive trust claim does not identify any specific property that in equity belongs to [it] nor does it assert any wrongful conduct in obtaining that property. . . . [It] seeks . . . damages for failure to perform contractual obligations.").

The Court concludes that the "principal objects" of this suit are money damages for a breach of contract, and therefore the requested injunction is barred by the Supreme Court's holding in Grupo Mexicano.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Commission's Renewed Motion for Preliminary Attachment and Motion for Temporary Restraining Order (Doc. No. 90) is **DENIED**.

Dated: January 8, 2013                         s/Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge